## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SALAHUDDIN F. SMART,** | **Civil Action No. 15-1065** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **ANGEL SANTIAGO, ADMINISTRATOR, et al.,** | |
| **Defendants.** | |

**WOLFSON, District Judge:**

### I.      INTRODUCTION

Plaintiff, who was released from prison on November 11, 2014, brings this § 1983 action

*in forma pauperis.*  Based on his affidavit of indigence, the Court granted Plaintiff's application

to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court

to file the Complaint.  (No. 3.)   At this time, the Court must review the Complaint, pursuant to

28 U.S.C. §§ 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious,

for failure to state a claim upon which relief may be granted, or because it seeks monetary relief

from a defendant who is immune from such relief.   As explained below, the Complaint proceeds

in part and is dismissed in part.

### II.     FACTUAL BACKGROUND

Plaintiff alleges that, on October 4, 2014, two unnamed corrections officers performed

what is commonly termed a visual body cavity strip search on Plaintiff prior to his visit to the

infirmary.  (No, 1, Compl. at 6.)  Plaintiff was required to remove his clothing, "swipe through

his ear, manipulate his ears, open his mouth, move his tongue around, grab his genitals, lift up

1

his testicles, turn around [and] face the wall[,] l[i]ft up his left foot, th[e]n his right foot[,] and th[e]n bend over spread[ing] his buttocks[,] th[e]n squat and cough." (*Id.*)  He was then given back his clothing to get dressed, handcuffed, and escorted to and from the infirmary by the two officers.  (*Id.*)  Because he was shackled and under continuous escort, Plaintiff contends that it was impossible for any contraband to have been transferred to him during this time.  (*Id.*)  He alleges that upon his return to the close custody unit, he was nevertheless subjected to a second visual body cavity strip search.  (*Id.*)  Plaintiff contends that the second strip search violated his Fourth Amendment right to be free of unreasonable searches.  He has sued the unnamed corrections officers ("John Doe corrections officers") in their individual capacities, and has also sued Administrator Angel Santiago and Commissioner Gary M. Lanigan ("supervisory Defendants") for allegedly failing to train and/or supervise their subordinates regarding visual body cavity strip searches.  Plaintiff additionally alleges state-law claims for intentional infliction of emotional distress against all Defendants, and states in his Complaint that "a notice of tort claim was sent and filed with the State of New Jersey."  (Compl. at 3.)  He seeks varying amounts of damages from all Defendants.

## III.   **ANALYSIS**

### a.  **Standard for *Sua Sponte* Dismissal under the Prison Litigation Reform Act**

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).  Under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).  The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Allegations that are no more than legal conclusions are not entitled to the same assumption of truth.  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." *Id.* (internal quotation marks omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Nevertheless, "*pro se* litigants

still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10–4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013).

### b.   Plaintiff's Fourth Amendment Claim Arising from the Second Strip Search
### i.   Claims Against the Individual John Doe Officers

Plaintiff's Complaint focuses narrowly on the second visual body cavity strip search performed by the John Doe officers and contends that this second search violated his Fourth Amendment right to be free from unreasonable searches.  Inmates do not have a Fourth Amendment right to be free of strip searches under all circumstances.  *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also Watson v. Secretary Pennsylvania Dept. of Corrections*, 436 F. App'x. 131, 136 (3d Cir. Jul. 8, 2011).  Although strip searches constitute a "significant intrusion on an individual's privacy," *see United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), where officials conduct such searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment.  *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309–311 (3d Cir. 2010), affirmed —— U.S. ——, 132 S.Ct. 1510, 1516–17, 182 L.Ed.2d 566 (2012).

 "The Supreme Court has held that visual body cavity searches may be conducted by prison officials without probable cause, but that they must be conducted in a reasonable manner." *Brown v. Blaine*, 185 F. App'x 166, 169 (3d Cir. 2006) (citing *Bell*, 441 U.S. at 559–60); *see also Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).  When determining the reasonableness of a search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" and consider "the scope of the particular intrusion, the manner in which it is

4

conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 558-59 (holding that the prison's policy of strip and visual body cavity searches, requiring inmates to stand naked, lift their genitals and bend over and spread their buttocks for visual inspection, did not violate an inmate's Fourth Amendment rights); *see also Brown v. Blaine*, 185 F. App'x at 169–70 (finding no constitutional violation where inmate was required to lift his penis and testicles, spread his buttocks and then place his hands on his head and sweep his mouth with his fingers).

The Supreme Court recently held that it is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something. *Florence*, 132 S.Ct. at 1516–17 (explaining that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities . . . . The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials," so that, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations[,] courts should ordinarily defer to their expert judgment in such matters."); *see also Small v. Wetzel*, 528 F. App'x. 202, 207 (3d Cir. 2013) ("it is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something") (citing *Florence*, 132 S.Ct. 1510).

The visual body cavity search at issue here was conducted after Plaintiff returned to a close custody area of the prison.  The Third Circuit Court of Appeals has held that prison officials may conduct visual body cavity searches when an inmate enters and exits his cell in a

restricted housing unit, if such searches are performed in a reasonable manner. *Millhouse v. Arbasak*, 373 F. App'x. 135, 137 (3d Cir. 2010) (citing *Bell*, 441 U.S. at 559–60); *see also Brown*, 185 F. App'x at 169-70 (upholding the constitutionality of a visual body cavity search performed on a prisoner upon his reentry into a restricted housing unit where the plaintiff did not "challeng[e] the need for the search, but rather, the manner in which it was performed").

Here, Plaintiff challenges the reasonableness of performing a second visual body cavity strip search because he was stripped searched in the same manner prior to leaving the close custody area and was shackled and escorted by officers for the entire period between the two searches. Accepting plaintiff's factual allegations as true, *see Fleisher*, 679 F.3d at 120, but disregarding his legal conclusions, *see Bistrian*, 696 F.3d at 365, the Court finds that Plaintiff's Fourth Amendment claim against the individual John Doe officers is not subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) at this time.

### ii. Supervisory Liability

Plaintiff has also sued Defendants Santiago and Lanigan alleging that they failed to train/supervise their subordinates regarding constitutionally permissible strip searches. Because Plaintiff fails to allege facts supporting his claims for relief against Defendants Santiago and Lanigan, the Court dismisses without prejudice the failure to train and/or supervise claims against the supervisory Defendants.

Courts do not recognize § 1983 liability on a theory of *respondeat superior*; instead, a plaintiff is required to allege that the defendant, through defendant's own actions, violated the Constitution. *See Iqbal*, 129 S.Ct. at 1948; *see also Jordan v. Cicchi*, 428 F. App'x 195, 198-99 (3d Cir. 2011) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The Third Circuit has identified two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates: (1) "liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiffs rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (internal citations and quotations omitted).  "Failure to" claims—failure to train, failure to discipline, or, as is the case here, failure to supervise—are generally considered a subcategory of policy or practice liability.  *Id.* at 316-17 (citing Rosalie Berger Levinson, Who Will Supervise the Supervisors? Establishing Liability for Failure to Train, Supervise, or Discipline Subordinates in a Post–Iqbal/Connick World, 47 Harv. C.R.-C.L. L.Rev. 273, 280 (2012)).[1]

    To hold an official liable on a claim for failure to supervise based on a policy or practice, a plaintiff "must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure."  *Barkes*, 766 F.3d at 317; *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989).

    As currently pleaded, Plaintiff's Complaint appears to focus on the alleged inadequacy of the Defendants' supervision and/or training.  Plaintiff's claims against Defendants Santiago and

---

[1] In *Sample v. Diecks*, the Third Circuit explained that "'supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." 885 F.2d 1099, 1116 (3d Cir. 1989).

Lanigan are identical.  In Counts one and two of his Complaint, he alleges that each of the

supervisory Defendants

> failed to train/supervise his subordinates in regards to when it is
> constitutionally required to perform a strip search within the
> Garden State Youth Correctional Facility. . . . The defendant
> failed to equip his subordinates with the tools to handle the
> recurrent situation in particular when after a segregated inmate is
> moved in the prison while under continuous escort and
> observation, that there is no state int[erest] for this particular
> search.  There was a likelihood that the situation will recur and the
> predictability that an officer lacking specific tools to handle the
> situation will violate citizens' rights against unreasonable searches.
> Therefore the defendants as policymaker made a decision not to
> train the officer reflected "deliberate indifference" to the obvious
> consequence of the policymaker's choice – namely, a violation of a
> [F]ourth [A]mendment constitutional or section 1983 statutory
> right.

(No. 1, Compl. at 1-2.)  Although Plaintiff makes general allegations that the supervisory

Defendants failed to supervise and/or train subordinates "in regards to when it is constitutionally

required to perform a strip search within the Garden State Youth Correctional Facility,"

Plaintiff's factual recitation does include any facts about the roles played by Defendants Santiago

and/or Lanigan and makes only the following general allegations regarding unspecified

Defendants:

> The actions of defendants demonstrate that they believe it is in
> essence per se reasonable to conduct a strip search whenever a
> prisoner leaves the close custody unit of the [prison] and comes
> back while under con[tinuous] escort by two officers while
> shackled in the facility because of the state's overriding interest in
> not permitting contraband to move throughout the facility.

(*Id.* at 6.)  Plaintiff further maintains that "[t]he current training on strip searches alerted the

individual defendants that the second strip search under the circumstances must require

individu[alized] reasonable suspicion."  (*Id.* at 7.)  Based on Plaintiff's allegations, it is unclear

what role, if any, the supervisory Defendants played in the alleged violation of Plaintiff's rights

and whether the second strip search comported with prison policy and/or training or contravened current prison policy and/or training.

The Court finds that the Complaint as currently pleaded is conclusory and does not contain sufficient facts for the Court to assess whether Plaintiff states a claim for supervisory liability against Defendants Santiago and Lanigan for their alleged failure to train and/or supervise their subordinates.  And although Plaintiff strings together legal standards relevant to failure to train and/or supervise claims, these bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Accordingly, this Court will dismiss without prejudice the Complaint against Defendants Santiago and Lanigan, and Plaintiff may replead these allegations in an amended complaint.  To state a claim for relief against the supervisory Defendants, Plaintiff must pleads facts (1) identifying the specific supervisory policy, practice or procedure that the supervisor failed to employ, and showing that (2) the existing practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the subordinate's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.  *See Barkes*, 766 F.3d at 317.[2]

---

[2] Generally, in failure to train cases, deliberate indifference can be shown only by demonstrating "[a] pattern of similar constitutional violations by untrained employees," though a single incident can suffice in the rare case where the unconstitutional consequence of the failure to train is patently obvious.  *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

### iii.  Intentional Infliction of Emotional Distress

Plaintiff's state-law claim for intentional infliction of emotional distress ("IIED"), which he alleges against all Defendants, is also insufficiently pleaded and barred by the verbal threshold requirement of the New Jersey Tort Claims Act ("NJTCA").  A claim of IIED requires a plaintiff to plead intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.  *Taylor v. Metzger*, 152 N.J. 490, 509 (N.J. 1998).  Furthermore, the New Jersey Tort Claims Act, which applies to claims for IIED, *see Lascurain v. City of Newark*, 349 N.J. Super. 251, 281 (App. Div. 2002), does not permit damages for pain and suffering unless there is a permanent injury where medical expenses exceed $3,600:

> No damages shall be awarded against a public entity or public employee for pain and suffering . . . ; provided, however, that this limitation . . . shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J. Stat. Ann. § 59:9–2(d); *see also Gretzula v. Camden County Technical Schools Bd. of Educ.*, 965 F.Supp.2d 478, 490-91 (D.N.J. 2013) (applying N.J. Stat. Ann. § 59:9–2(d) to IIED claim).[3]

Here, Plaintiff has sued all four Defendants for IIED but alleges no facts whatsoever to suggest that Defendants Santiago and Lanigan, who did not participate in the strip search, engaged in any conduct that amounts to intentional and outrageous behavior.  Furthermore, even assuming that Plaintiff has alleged intentional and outrageous conduct by the two John Doe officers who conducted the second strip search, Plaintiff fails to allege any facts showing that he suffered severe emotional distress as a result of the second strip search or to plead facts meeting the specific requirements of N.J. Stat. Ann. § 59:9–2(d).  As such, Plaintiff's claims for

---

[3] At this time, the Court does not address whether Plaintiff has otherwise met the substantive or procedural requirements of the NJTCA.

intentional infliction of emotional distress are dismissed against all Defendants.  Because it is conceivable that Plaintiff may be able to plead facts to overcome these deficiencies with respect to some or all of the Defendants, the dismissal is without prejudice.

**IV.    CONCLUSION**

For the reasons stated above, Plaintiff's Fourth Amendment claim against the John Doe Defendant officers proceeds at this time.  The remainder of the Complaint is dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.  An appropriate order follows.

__/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Date: May 11, 2015

11